1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

NWS Corporation, a Massachusetts corporation,

CASE NO. 13cv2247-GPC(BGS)

11

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR ATTORNEY FEES**

Plaintiff,

12

vs.

13
14

DISH NETWORK, LLC, a Colorado limited liability company,

[Dkt. No. 28.]

15

Defendant.

16
17

Before the Court is Defendant's motion for attorney fees. (Dkt. No. 28.)

18

Plaintiff filed a response on January 10, 2014. (Dkt. No. 31.) Defendant filed a reply

19

on January 28, 2014. (Dkt. No. 34.) Based on a review of the briefs, supporting

20

documents, and the applicable law, the Court GRANTS in part and DENIES in part

21

Defendant's motion for attorney fees.

22

**Background**

23

On September 19, 2013, Plaintiff NWS Corporation ("NWS") filed a complaint

24

against Dish Network, LLC ("Dish"). (Dkt. No. 1.) Plaintiff alleged causes of action

25

for intentional interference with contractual relations, tortious interference of business,

26

intentional interference with prospective economic advantage, refusal to furnish service

27

in violation of 47 U.S.C. § 201(A), and unfair business practices. (Id.) It also sought

28

preliminary injunctive relief. (Id.) On September 20, 2013, Plaintiff filed an *ex parte*

[13cv2247-GPC(BGS)]

1    motion for temporary restraining order.  (Dkt. No. 4.)  After briefing and hearing oral

2    argument, the Court denied Plaintiff's motion for a temporary restraining order on

3    September 30, 2013.  (Dkt. No. 16.)

4         On October 4, 2013, the parties filed a joint motion for extension of time to

5    respond to the Complaint.  (Dkt. No. 20.)  On October 24, 2013, Defendant filed a

6    motion to dismiss.  (Dkt. No. 23.)  On November 21, 2013, Plaintiff filed a notice of

7    voluntary dismissal without prejudice.  (Dkt. No. 25.)

8                                          **Discussion**

9         Defendant seeks attorney fees in the amount of $125,840.65 consisting of

10   $112,111.15 for time spent prior to the reply to the motion for attorney fees and

11   $13,729.50 in fees related to the reply.[1]  Dish contends it is the prevailing party and is

12   entitled to attorney fees pursuant to the attorney fee provision in the Dish Network

13   Retailer Agreement ("Retailer Agreement" or "Agreement") between Dish and NWS.

14   Defendant opposes and presents numerous arguments that Dish is not entitled to

15   attorney fees.

16   **A.    Whether Attorney Fee Shifting Provision in the Retailer Agreement Applies**

17        NWS argues that the attorney fee provision in the Retailer Agreement does not

18   apply to the instant case.  Dish contends that the broad attorney fee provision applies.

19        First, NWS argues that Dish cannot recover fees on an expired, inadmissible,

20   blank and unsigned form contract.  NWS challenges Brianna Andersen's qualifications

21   to authenticate the Retailer Agreement because she was not employed by Dish in her

22   present capacity when the parties allegedly entered into the Agreement in 2010.

23   Moreover, the agreement attached to the motion is blank, unsigned and does not

24   reference NWS.  Therefore, NWS contends that there is no evidence that the parties

25   entered into the Retailer Agreement.   In reply, Dish asserts that it properly

---

27   [1]Originally, in the moving papers, Defendant sought $130,720.40 in fees plus
     estimated additional $15,000 in fees to review NWS's opposition, prepare a reply and
28   prepare for and attend any oral argument.  However it its reply, it reduced these
     amounts to $125,840.65 reflecting several write-offs and discounts offered to Dish
     after the filing of its motion for attorney fees.

authenticated the Agreement not only by Andersen, who is Corporate Counsel, but also in its reply, it supplements its authentication of the Retailer Agreement by providing a declaration of Melissa Van Vorst, who is Operations Manager for Dish and has been employed by Dish since 2002.  (Dkt. No. 37.)

Under Federal Rule of Civil Procedure 901, the "proponent must produce evidence sufficient to support a finding that the item is what the proponent claim it is." Fed. R. Civ. P. 901(a).  As to testimony of a witness with knowledge, the proponent must present "testimony that an item is what it claimed to be."  Fed. R. Civ. P. 901(b)(1).

Here, Van Vorst has personal knowledge concerning the Sales Operations Division that supports Dish's indirect sales partners in 2010.  (Dkt. No. 37, Van Vorst Decl. ¶ 3.)  She also has personal knowledge regarding the procedures on Siebel which is "a system-partner relationship manager systems that houses the account information and contracts of all of Dish's indirect sales partners, including NWS Corporation."  (Id. ¶ 2.)  The Court concludes that Van Vorst declaration is sufficient to authenticate the Retailer Agreement signed by the parties in December 2010.  Whether or not Andersen's declaration properly authenticates the Retailer Agreement, the declaration of Van Vorst cures any alleged defect with Anderson's original authentication of the Retailer Agreement.

In her declaration, Van Vorst explains the procedure on how a retailer enters into an electronic Retailer Agreement with Dish.  (Id. ¶¶ 4-10.)  The records indicate that NWS entered into the Retailer Agreement and agreed to be bound by its terms and conditions when Dish's software auto-populated the information put in by NWS onto the Agreement.  (Id. ¶ 8.)  The electronically-signed, auto-populated version of the Agreement would have been available to Douglas De Leo, NWS's VP at the time, and now CEO, for as long as the account existed.  (Id., Ex. C.)  Attached to the Van Vorst declaration, is a Retailer Agreement which lists NWS as a party to the contract.  (Id.,

Ex. B (under SEAL).)[2]  Lastly, Dish attaches a screenshot from its software confirming that the agreement was signed in December 2010 by Douglas De Leo.  (Id., Ex. D.)

Moreover, although the Agreement's initial term expired in December 2012, the attorney fee provision concerning disputes as to any provision in the agreement survives termination or expiration.  (Dkt. No. 39, Van Vorst Decl., Ex. B at 31 (under SEAL).)

Therefore, NWS's argument that Dish provided an expired, inadmissible, blank and unsigned form contract is without merit.  The Court also finds NWS's argument disingenuous as the Complaint alleges that NWS and Dish entered into a retailer agreement with an Effective Date as of December 31, 2010 . . . ." (Dkt. No. 1, Compl. ¶ 12.)  Moreover, as Dish points out, NWS did not dispute the authenticity of the Retailer Agreement in its *ex parte* application for temporary restraining order.  NWS's attempt to dispute the existence of the Retailer Agreement fails.

NWS also argues that the claims alleged in the Complaint do not arise from the Agreement, and therefore, the attorney fee provision is inapplicable.  It alleges that the claims in the Complaint "do not arise out of any contractual agreement with Dish" and asserts that there "is no interrelationship between the claims arising from Dish interference with NWS's contracts with the Navy and 4Com, on the one hand, and the alleged agreement between NWS and Dish, which expired in 2012." (Dkt. No. 31 at 19, 20 (emphasis in original).)  Defendant argues that the claims fall within the broad scope of the parties' attorney fee shifting provision.

Contrary to NWS's assertions, the allegations in the Complaint arise out of the Dish Retailer Agreement.  For example, according to the Complaint, NWS and Dish entered into a retailer agreement with an effective date of December 31, 2010.  (Dkt. No. 1, Compl. ¶ 12.)  The Complaint cites or restates relevant provisions of the Retailer

---

[2]The Court notes that while the Retailer Agreement has been filed under seal, Dish publicly filed citations to provisions of the Agreement in its briefs.  Accordingly, it appears that the specific provisions cited by Dish are not subject to sealing. Therefore, the Court's reference to these provisions are also not subject to sealing.

Agreement. (Id. ¶¶ 12, 13.) The Complaint also states that since the Dish Agreement is confidential, it is not attached to the Complaint implicating that if it were not confidential, the Agreement would have been attached to the Complaint. (Id. ¶ 12.) Headings in the Complaint include: "Dish Refuses to Perform under the Dish Contract" (id. at 7; see also ¶ 37); and "Dish Terminates Service at the Naval Installation." (Id. at 8). The Complaint further alleges that "Dish thus breached the Dish Contract by failing to provide service through the 90-day transition period following the conclusion of the Bridge Contract." (Id. ¶ 34.)

While Plaintiff disclaims[3] that the Dish Retailer Agreement has any bearing on the Complaint and is not being sued on, the allegations concerning Dish's actions are based on its failure to abide by the terms of the Retailer Agreement and are asserted throughout the Complaint. Moreover, the attorney fee provision in the Agreement is broad covering disputes as to any provision in the Agreement. Therefore, Plaintiff's argument that the claims in the Complaint do not arise from the Agreement is not persuasive.

Lastly, Plaintiff argues that the Retailer Agreement is unconscionable, procedurally and substantively. Defendant opposes. Unconscionability has a procedural and a substantive element. A & M Produce Co. v. FMC Corp., 135 Cal. App. 3d 473, 486 (1982). The procedural component focuses on oppression, unequal bargaining power, and surprise. Stirlen v. Supercuts, Inc., 51 Cal. App. 4th 1519, 1532 (1997). The substantive element "has to do with the effects of the contractual terms and whether they are unreasonable." Marin Storage & Trucking, Inc. v. Benco Contracting and Eng'g, Inc., 89 Cal. App. 4th 1042, 1053 (2001). This element must be evaluated at the time the contract was made. Stirlen, 51 Cal. App. 4th at 1532. "To

_____

[3]The Complaint alleges that "[w]hile Dish's above-mentioned breach of the Dish Contract is actionable, this lawsuit is not based on any matter, claim or cause of action arising from the Dish Contract. The Dish Contract has no bearing on this lawsuit." (Dkt. No. 1, Compl. ¶ 36.)

[13cv2247-GPC(BGS)]

be unenforceable, a contract must be both procedurally and substantively unconscionable." Id. The Court looks at whether the contract terms are so unreasonable, unjustified, or one-sided as to "shock the conscience." Id. at 1055.

Plaintiff argues that enforcing a blank, unsigned form contract that has not been properly authenticated is procedurally unconscionable. As discussed above, the Court determined that the Retailer Agreement was properly authenticated and NWS electronically entered into the Agreement with Dish. Therefore, this argument fails.

As to substantive unconscionability, Plaintiff summarily argues that the fact that the attorney provision applies to any and all disputes between NWS and Dish for all of eternity[4] and that all disputes are to go through the Colorado District Courts subject to Colorado law make the contract unconscionable. Plaintiff does not explain why these provision are one-sided, unreasonable and unjustified as to shock the conscience. Moreover, since Plaintiff has not demonstrated procedural unconscionability, he cannot prevail on his argument regarding unconscionability. See Stirlen, 51 Cal. App. 4th at 1533 (in order to be unenforceable, a contract must be both procedurally and substantively unconscionable). Accordingly, the Court concludes that the attorney fee provision is not unconscionable.

Based on the above, the Court concludes that the attorney fee-shifting provision in the Retailer Agreement applies to this case. The attorney fee provision in the Agreement provides:

> In the event of any suit, action or arbitration between Retailer and/or any of its Affiliates, on the one hand, and DISH and/or any of its Affiliates, on the other hand, including without limitation any and all suits, actions or arbitrations to enforce this Agreement, any Business Rules, any Promotional Program or any provisions hereof or thereof, subject to Section 15.3.3, the prevailing party shall be entitled to recover its costs, expenses and reasonable attorneys' fees, at arbitration, at trial and on appeal, in addition to (and without limitation of) all other sums allowed by law. The provisions of this Section 17.

---

[4]While the attorneys fee provision is broad and survives expiration or termination of the Agreement, it is limited to any suit arising out of any provision in the Retailer Agreement. (Dkt. No. 39, Van Vorst Decl., Ex. B at 31 (under SEAL).)

11 shall survive expiration or termination of this Agreement (for any reason or no reason) indefinitely.

(Dkt. No. 39, Van Vorst Decl., Ex. B at 31 (under SEAL).)  Although the contract expired on December 31, 2012, the attorney fee provision survives expiration or termination.  (See id. (under SEAL).)  Under the Agreement, a prevailing party is entitled to recover attorney fees.  (See id. (under SEAL).)  The Court looks to see what applicable state law applies to interpret the term "prevailing party" because a "prevailing party is identified with reference to the law of the state that governs the contract providing for an award of attorneys' fees."  Laurel Village Bakery, LLC v. Global Payments Direct, Inc., No. C06-1332 MJJ(MEJ), 2006 WL 3499234, at *2 (N.D. Cal. 2006).

**B.      Choice of Law Provision**

The Retailer Agreement contains a Colorado choice of law provision as to any claims between the parties.  (Dkt. No. 39, Van Vorst Decl., Ex. B § 15.5 (under SEAL).)  Neither party directly addresses this provision.  While Dish raises the choice of law provision, it argues that since both Colorado and California have similar laws regarding prevailing party, it would prevail under either state law.  Plaintiff does not address the Colorado choice of law provision, and without explanation or authority, applies California law.  Since the Court is to interpret the attorney fee provision in the Retailer Agreement, the Court must consider the choice of law provision.

Since this is a diversity case, the court applies the choice of law rules of the forum state, which is California.  Sims Snowboards, Inc. v. Kelly, 863 F.2d 643, 645 (9th Cir. 1988).  In California, when "a choice of law provision has been negotiated at arm's length, the law of the state chosen by the parties will apply as long as the chosen state has a substantial relationship to the parties or their transaction or there is any other reasonable basis for the parties' choice of law and as long as the chosen state's law is not contrary to a fundamental policy of California."  Nedlloyd Lines B.V. v. Superior

1  Court, 3 Cal.4th 459, 466 (1992). A substantial relationship is present when at least

2  one of the parties resides in the chosen state. Id. at 468 (Hong Kong—the chosen

3  state—had substantial relationship to the parties in a breach of contract action where

4  two of the parties were incorporated under the laws of Hong Kong and had registered

5  offices there.) Here, Dish is a Colorado limited liability company with its principal

6  place of business in Colorado. (Dkt. No.1, Compl. ¶ 2.) Therefore, Colorado has a

7  substantial relationship to the parties. Second, neither party has addressed whether

8  Colorado's state law is contrary to a fundamental policy of California and considers

9  this issue waived. Accordingly, the Court applies Colorado law in determining whether

10 Dish is a prevailing party in this case.

11 **C.    Prevailing Party**

12     Defendant argues it is the prevailing party since the attorney fee provision is

13 broad and covers tort causes of action and it succeeded in all of its litigation objectives.

14 Plaintiff disagrees  arguing that Dish is not a prevailing party because Dish prevailed

15 on very little and the Court only determined that NWS did not possess sufficient

16 evidence to warrant extraordinary relief. It also contends that the litigation was short-

17 lived and that it did not drag Dish through years of litigation and did not propound

18 unnecessary or harassing discovery.

19     "Under the American Rule, the prevailing party [in litigation] is ordinarily not

20 entitled to collect a reasonable attorneys' fee from the loser. This default rule can,

21 [however,] . . .be over come by statute [or] . . . by an enforceable contract allocating

22 attorney's fees." Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co., 549

23 U.S. 443, 448 (2007) (quotations and citations omitted). In Colorado, the prevailing

24 party in a tort or contract action cannot recover attorney fees unless a statute, private

25 contract or procedural rule provides otherwise. Bernhard v. Farmers Ins. Exch., 915

26 P.2d 1285, 1287 (Colo. App. 1996).

27     Fee shifting provisions contemplate that the "prevailing party" will be entitled

28

to recover its attorney fees and that there will be one winner and one loser regarding payment of those fees. Brock v. Weidner, 93 P.3d 576, 579 (Colo. App. 2004); Wheeler v. T.L. Roofing, Inc., 74 P.3d 499, 503–04 (Colo. App. 2003). The trial court has discretion in determining which party prevailed under a contractual fee-shifting provision. Dennis I. Spencer Contractor, Inc. v. City of Aurora, 884 P.2d 326, 328 (Colo. 1994). However, the interpretation of such a provision constitutes a legal question which is subject to *de novo* review. In re Estate of Gattis, –P.3d –, 2013 WL 5947134, at *8 (Colo. App. Nov. 7, 2013).

In order to be a prevailing party under a fee-shifting provision in a contract, "a party must succeed on a significant issue in the litigation and achieve some of the benefit sought." Anderson v. Pursell, 244 P.3d 1188, 1194 (Colo. 2010). The issue need not be the central issue and need only be a significant one. Id. Courts should examine the overall case and where the parties spent the majority of their time and resources. Id. (citing Archer v. Farmer Bros., 90 P.3d 228, 231 (Colo. 2004) (even though there was an adverse judgment against prevailing party, the vast majority of the time was devoted to claims that were dismissed against the party)).

In Brock, while the appellate court held that the trial court did not abuse its discretion in declining to award attorney fees as a condition of dismissal pursuant to Colorado Rule of Civil Procedure 41(a)(2), it held that the trial court abused its discretion in not requiring plaintiffs to pay defendants' reasonable costs and attorney fees as the "successful parties" in the proceeding under the fee shifting provision in the covenants. Brock v. Weidner, 93 P.3d 576, 579 (Colo. App. 2004). The court explained that defendants achieved substantial success in the litigation by precluding plaintiffs from obtaining a preliminary injunction, in defending against plaintiffs' motion for partial summary judgment and plaintiffs' demand for a jury trial, and when the parties filed a joint dismissal with prejudice based on a settlement agreement they had reached. Id. at 579-80. The court also held that a dismissal with prejudice of all

1   claims against defendants is an adjudication on the merits.  Id. (citing O'Done v.

2   Shulman, 124 Colo. 445, 448 (1951); see also Harrison v. Edison Bros. Apparel Stores,

3   Inc., 924 F.2d 530, 534 (4th Cir. 1991) (voluntary dismissal with prejudice under Fed.

4   R. Civ. P. 41(a)(2) is a complete adjudication on the merits and no adjudication in favor

5   of defendants, by court or jury, can rise higher)).  As a result, the court held that the

6   trial court should have awarded defendants reasonable attorney fees.  Id.

7          Here, the bulk of the litigation was spent on defending Plaintiff's *ex parte*

8   motion for temporary restraining order where Defendant defeated Plaintiff's attempt

9   to seek an affirmative injunction.  Moreover, Plaintiff filed a notice of voluntary

10  dismissal without prejudice.  Based on these two significant filings, Defendant

11  succeeded on a significant issue in the litigation.  In making a determining as to who

12  is the prevailing party, the Court must determine which party prevailed.  Brock, 93 P.3d

13  at 580 (when a provision states that the prevailing party "shall be entitled" to recover

14  fees, the trial court must award reasonable fees to the prevailing party).  Accordingly,

15  the Court concludes that Dish is the prevailing party under the attorney fee shifting

16  provision in the Retailer Agreement.

17  **D.    Attorney's Fees**

18         In calculating attorney's fees, the lodestar method is used.  Hensley v. Eckerhart,

19  461 U.S. 424, 433 (1983); Payan v. Nash Finch Co., 310 P.3d 212, 217 (Colo. App.

20  2012).  The lodestar is calculated by multiplying the number of hours reasonably

21  expended on the litigation times a reasonable hourly rate.  Hensley, 461 U.S. at 433;

22  Tallitsch v. Child Support Servs., Inc., 926 P.2d 143, 147 (Colo. App. 1996).  The trial

23  court has discretion in making a determination on attorney's fees.  Payan, 310 P.3d at

24  217.  "The determination of reasonableness of attorney fees is a question of fact for the

25  trial court, and its ruling will not be disturbed on review unless patently erroneous and

26  unsupported by the evidence."  Id. (citing Tallitsch v. Child Support Servs., Inc., 926

27  P.2d 143, 147 (Colo. App.1996)).  The court's calculation of the lodestar amount is

28

[13cv2247-GPC(BGS)]

tag level

1    entitled to a strong presumption of reasonableness.  Id.

2        In its lodestar calculation, the court should exclude hours that were not

3    "reasonably expended" and exclude hours that are excessive, redundant, otherwise

4    unnecessary. . . ."  Hensley, 461 U.S. at 4343.  The lodestar may then "be adjusted

5    based upon several factors, including the amount in controversy, the length of time

6    required to represent the client effectively, the complexity of the case, the value of the

7    legal services to the client, awards in similar cases, and the degree of success achieved.

8    Dubray v. Intertribal Bison Co-op., 192 P.3d 604, 608 (Colo. App. 2008) (citing

9    Tallitsch, 926 P.2d at 147.))

10       **1.    Reasonable Hourly Rate**

11       Plaintiff does not dispute the reasonableness of Defendant's attorneys and

12   paralegal's hourly rate.  (Dkt. No. 31 at 23.)   The hourly rates of Dish's attorneys are

13   the following: named partner Richard Patch ($720/hour); partner and lead attorney

14   Cliff Yin ($575/hour); associate Suneeta Fernandes ($320/hour); and paralegal Jennifer

15   Nelson ($295/hour).

16       **2.    Hours Reasonably Expended**

17       Plaintiff disputes the 302.6 hours spent litigating the case from the end of

18   September until the beginning of December 2013 as unreasonable and offensive.  These

19   hours are divided to four categories: 1) preparing the TRO opposition; 2) preparing the

20   motion to dismiss; 3) negotiating a settlement; and 4) preparing the Fee motion.

21       **a.    Preparing the TRO Opposition**

22       Dish billed 127 hours totaling $56,575.50 in opposing the TRO.  NWS argues

23   that it should not take 127 hours to prepare the opposition and argues that duplicative

24   tasks and egregious overbilling led to this number.  It argues that it should not take

25   three highly skilled and trained attorneys 80.40 hours to draft an opposition brief and

26   supporting declarations, an additional 19 hours spent communicating amongst counsel

27   and with Dish about the opposition; 24.7 hours researching matters related to the TRO

28

Opposition; and 9 hours spent by lead counsel to prepare and argue the TRO. According to NWS, since the TRO hearing was roughly 1 hour in duration the other 8 hours are not reasonable.  It contends that it is not reasonable for attorneys of this caliber to bill more than 24 hours in just five days relating to an opposition brief.[5]

Dish argues that a lot of time was spent drafting the opposition because NWS's motion raised several complicated issues, such as standing, irreparable harm, failure to join a necessary party, and lack of common carrier status.  Therefore, it was proper to spend 19 hours learning about the facts, reviewing documents, interviewing Dish witnesses since it had to learn about the parties' dealings which spanned several year. Lead counsel explains that he spent 8 hours preparing for the hearing given the multitude of issues in the case and the thirty three (33) cases cited by both parties.

Plaintiff presents conclusory arguments that the amounts billed were excessive, duplicative, and egregious without pointing to specific entries or provide reasons why. For example, NWS argues that based on the rates of Dish's counsel, they should not be billing these amount of hours.  (Dkt. No. 31 at 25 ("This is not reasonable, especially at opposing counsel's hourly rates.")  Also, without providing any legal or factual support, NWS asserts that Dish's counsel is "more than capable of producing a quality response in 40 to 45 hours, and should be calculated at the median between Mr. Yin's and Ms. Fernandes' hourly rates, which is $447/hour."  (Id. at 26.)  NWS provides no authority that a quality response would entail only 40 to 45 hours and that the rate should be calculated at the median.

Accordingly, the Court concludes that the hours spent on preparing the opposition to the TRO application and attending the hearing are reasonable.  The

[5]Plaintiff also argues that the billing entries do not indicate who drafted which sections of the TRO opposition in order for NWS to ascertain who drafted the two and a half pages of discussion regarding the Colorado forum selection clause and whether 4COMM was a necessary party because these issues were not addressed by the Court. Contrary to Plaintiff's argument, the Court addressed these arguments in a footnote. (Dkt. No. 16 at 10 n. 1.)  Moreover, Plaintiff provides no legal support that attorney fees do not apply to portions of briefs not addressed by a court.

1  opposition entailed 90 pages, including a 31 page brief addressing numerous issues to

2  rebut Plaintiff's argument, two declarations, a request for judicial notice and a separate

3  motion to file documents under seal. This had to be accomplished within a few days

4  due to the shortened briefing schedule. Accordingly, the number of hours spent

5  opposing the temporary restraining order was reasonable and Dish is entitled to

6  $56,575.50 for preparing the TRO opposition.

7                    **b.     Preparing the Motion to Dismiss**

8          NWS argues that fees related to preparing the motion to dismiss that was filed

9  on October 24, 2013 should be excluded since Dish was informed and aware that NWS

10  was planning on dismissing the lawsuit shortly after receiving the Court's ruling on the

11  TRO filed on September 30, 2013. (Dkt. No. 31-3, Jewitt Decl. ¶ 3.) In a declaration,

12  NWS's counsel, Bradley Jewitt, states that on October 3, 2013, he spoke with Dish's

13  counsel, Clifford Yin, on the telephone to discuss the case and the proposed sitpulation.

14  He advised Yin that NWS was leaning towards dismissal of the lawsuit but it could not

15  make a decision until it discussed the matter with the Navy which was not possible

16  during the government shutdown. (Id.) In response, Yin states that he spoke to Jewitt

17  by telephone on October 3, 2013, but does not recall him saying that NWS was

18  "leaning towards dismissing the lawsuit altogether" but instead NWS could not decide

19  until it talked to the Navy which he could not do because of the government shutdown.

20   (Dkt. No. 34-1, Jin Decl. ¶ 6.) The parties, however, agreed to extend Dish's time to

21  respond to the complaint for two weeks, until October 24, 2013.

22          As the government shutdown was ongoing, on October 15, 2013, NWS

23  authorized its attorney to provide Dish with a second stipulation to further extend its

24  deadlines to respond to the Complaint and Jewitt left a voicemail with Yin on October

25  16, 2013 to that effect. (Dkt. No. 31-3, Jewitt Decl. ¶ 4.) When Dish did not respond

26  to Jewitt's voicemail, he sent Yin a follow up email on October 18, 2013 concerning

27  the stipulation. (Id. ¶ 5.) In that email response, Dish indicated that it did not need

28

another extension and intended to file its motion to dismiss on October 24, 2013. (Dkt. No. 31-4, Ex. 4.)

According to Dish, since the October 24, 2013 deadline was not far away and it had not heard anything from NWS and given the complexity of the issues in the case, Dish's counsel continued to work on the motion to dismiss but in a limited manner from October 7- October 16, 2014. (Id. ¶ 7.) During the week of October 7, 2013, Yin only spent 5.4 hours working on the motion to dismiss. (Id.) However, by October 18, 2013, Dish had largely completed the motion to dismiss and indicated by email that he did not need an additional extension and Dish would file a response on October 24, 2013. (Id. ¶ 9.)

While it is disputed whether NWS informed Dish that it was intending to dismiss the lawsuit on October 3, 2013, there was the possibility that the Navy might dismiss the case. Therefore, the parties agreed to extend Dish's time to file a responsive pleading. This put Dish on notice that the case might be dismissed and allowed Dish to put a halt on its work on the motion to dismiss. This is highlighted by the fact that Dish's counsel admits he limited the amount of work on the motion to dismiss from October 7-October 16, 2014. Moreover, on October 16, 2013, Dish was provided another opportunity to stipulate to an extension of time to file a responsive pleading which would limit unnecessary fees on a motion to dismiss; however, Dish refused and billed unnecessary hours to finalize and file the motion to dismiss.

Accordingly, the Court concludes that the hours spent on the motion to dismiss after October 3, 2013 were unreasonable. The total amount of hours and fees that were billed from October 4-October 24, 2013 on the motion to dismiss is not easily ascertainable from the record. Therefore, Dish's counsel shall exclude those fees from the award of attorneys' fees.

### c.   Settlement Discussions

After NWS informed Dish that it intended on dismissing the case, the parties

entered into negotiations as to settlement and dismissal of the case.

NWS argues that the fifteen hours spending on settlement discussions from November 18, 2013 to November 21, 2013 are not reasonable especially since counsel only spoke on the phone two or three times and never more than 10 minutes. (Dkt. No. 31-3, Jewett Decl. ¶ 6.) Dish argues that the 14.7 hours spent on settlement discussions and drafting a settlement agreement which included research were reasonable.  It contends that the settlement agreement was complicated because it required an analysis of what claims Dish may have against NWS which involved analyzing what obligations under the thirty nine (39) page Retailer Agreement would remain in effect following the settlement.  Yin states that the drafting of the settlement agreement was complicated because they were negotiating a full mutual release. (Dkt. No. 34-1, Yin Reply Decl. ¶ 14.)

Contrary to Plaintiff's argument, the settlement discussions and drafting of the settlement agreement were not routine but work intensive involving analysis of the entire Retailer Agreement.  Moreover, NWS's counsel delegated the task of drafting the settlement agreement to Dish. (Dkt. No. 31-3, Jewett Decl., Ex. 5.)   Accordingly, the Court finds the fees of $7,854.00 related to settlement discussions are reasonable.

### d.    Preparing the Fee Motion

In its moving papers, Dish sought $40,413.50 in the preparation of this fee motion plus an additional estimated amount $15,000 to review NWS's opposition, prepare a rely and prepare for and attend oral argument.  In its reply, based on write-offs to Dish that occurred after the filing of its motion, the amount is reduced to $21,804.25 plus an additional $13,729.50 preparing the reply, declarations, and response to NWS's evidentiary objections. (Dkt. No. 34-1, Yin Reply Decl. ¶¶ 18, 19.) The fees total $35,533.75.

Plaintiff opposes arguing that Defendant's counsel "undoubtedly has dozens, if not hundreds, of former prevailing party attorney fee motions saved to the firm's

[13cv2247-GPC(BGS)]

computer system to use as drafting templates, and most certainly used one or more of them to expedite preparing the Fee motion." (Dkt. No. at 31 at 31.)  Plaintiff argues that the fees should not exceed 20 hours and should be calculated at the median between Mr. Yin's and Ms. Fernandes' hourly rates, which is $447/hour.

Dish argues that a attorney fee motion is time consuming requiring an analysis, coding and breakdown of every entry billed, plus separate declarations for every timekeeping, and legal research and analysis.  Moreover, a significant amount of time was spent analyzing and providing evidentiary support of its requested rates which included a thirty three (33) page declaration from an attorney fee rate expert.  Based on this declaration, Dish notes that NWS conceded that Dish's requested rates are reasonable.

Again, Plaintiff provides no authority for its calculations and provides summary arguments.  Accordingly, the Court finds that the attorney fees of $35,533.75, which includes significant write offs, spent on filing the motion for attorney fees is reasonable.

**E.    Evidentiary Objections**

Plaintiff filed evidentiary objections to the Andersen Declaration and the attached Retailer Agreement.  (Dkt. No. 32.)  Defendant opposes.  (Dkt. No. 33.) Because Van Vorst's declaration and attachment satisfies Rule 901, the Court overrules Plaintiff's objections as to the Andersen declaration.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

[13cv2247-GPC(BGS)]

**Conclusion**

Based on the above, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss.  Defendant shall be entitled to attorney fees as follows: $56,575.50 in opposing the TRO; $7,854.00 in settlement discussions; and $35,533.75 in preparing the Fee motion.  Defendant shall also entitled to attorney fees for work in preparing the motion to dismiss until October 3, 2013.  The hearing set for February 28, 2014 shall be **vacated.**

IT IS SO ORDERED.

DATED:  February 24, 2014

HON. GONZALO P. CURIEL
United States District Judge

[13cv2247-GPC(BGS)]